Submitted on record and brief September 2,
affirmed October 13, 1982

In the Matter of the Adoption and Change
of Name of

KIM WALKER, aka Kim
Wesley Valentino, a minor.
*by*
McMURRICK et al,
*Appellants.*

(No. 58-81-01419, CA A24578)
(Control)


In the Matter of the Adoption and Change
of Name of

DAVID PITMAN, aka David
Lamont Nesbitt, a minor.
*by*
McMURRICK et al,
*Appellants.*

(No. 58-81-01418, CA A24579)


In the Matter of the Adoption and Change
of Name of

VIRGINIA PARRIS, aka "Girl"
Parris, a minor.
*by*
McMURRICK et al,
*Appellants.*

(No. 58-81-01417, CA A24580)
(Cases Consolidated)

652 P2d 362

Greg Allen Hunt, Eugene, filed the brief for appellants.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

These are three consolidated adoption cases[1] in which the adoptive parents appeal the trial court's *sua sponte* vacation, on April 7, 1982, of three decrees of adoption entered February 5, 1982. We affirm.

The three adopted children—a girl, now age 10, a boy, now age 9, and a second girl, now age 8—have all been made wards of the New York Family Court and their biological parents' rights terminated by reason of abandonment. Each child was committed to the care and custody of Spence-Chapin Services to Families and Children (Spence-Chapin) of New York City. Although they are not related by blood, the three children have apparently been treated as a sibling group while in Spence-Chapin's care and while in foster care subject to Spence-Chapin's jurisdiction.

On October 30, 1980, the children were placed in the home of appellants David and Rebecca McMurrick (the McMurricks) for the purpose of adoption. On February 11, 1981, the McMurricks filed simultaneous petitions for adoption of the three children in Lane County Circuit Court. They were appointed guardians of the children pending disposition of their petitions for adoption. On February 2, 1982,[2] the court received notarized consents to the adoption of each child from Spence-Chapin, together with a recommendation of adoption for each child from PLAN, a McMinnville corporation which specializes in facilitating adoptions. In view of PLAN's investigation, the Children's Services Division did not conduct a separate inquiry. On February 5, 1982, the trial court entered decrees of adoption for all three children.

The next document appearing in each file is the trial court's order, entered on its own motion, vacating the adoption decrees. The order recites, in pertinent part,

"This matter coming on upon the Court's own motion that the Decree of Adoption and Change of Name entered herein be vacated, and the Court having considered

---

[1] The cases have been consolidated for appeal on appellants' motion. ORAP 6.30.

[2] The nearly one year delay is much longer than that contemplated by statute. *See* ORS 109.307. As will be shown, the delay was significant.

argument of counsel, * * * and the material transmitted from the State of New York, and the Court being fully advised, [the Decrees are vacated.]"

Unfortunately, the record before us does not contain the "material transmitted from the State of New York" to which the trial judge refers. We should therefore be at a loss to understand the trial court's reason for vacating the decrees were it not for the colloquy between the court and counsel which occurred on April 7, 1982, as clarified by appellants' brief in this court.

Facts developed at the April 7, 1982, hearing established that Spence-Chapin had been prevented from sending its final consents to the adoptions because of a New York City court order which "stayed the adoption" as to Spence-Chapin. The legal issue in New York dealt with alleged errors in a foster care review procedure that certain prior foster parents were raising, possibly in an attempt to bring the children back to New York.

On January 27, 1982, there was a hearing in New York, during which Spence-Chapin moved for and received approval to appeal the New York orders that "stayed the adoption" as to Spence-Chapin. On January 28, 1982, there was another hearing concerning the children in New York, at which time it was discovered that the written order of January 27, 1982, had stayed the execution of the orders which, in turn, had stayed the adoptions. Mr. Nowak, an attorney for Spence-Chapin, telephoned McMurricks' attorney, Hunt, to inform him of the January 27 order and that Spence-Chapin would send its consents to the adoptions to Oregon. Hunt received the consents on February 1, 1982, by way of the McMurricks' adoption agency, PLAN. Later, but still on February 1, in a telephone conversation between Nowak and Hunt, Hunt was informed that the original written order of January 27, 1982, had been physically altered and that he should no longer conclude that the stay of the adoption had been dissolved. Hunt did not have any further communication with persons in New York until February 10, 1982, when he informed an attorney in New York that the adoptions had been finalized.

On February 26, 1982, a New York appellate court ordered Spence-Chapin to "withdraw its consents"; withdrawals of consent were mailed to Lane County on March

1, 1982. Other correspondence and material was also sent to the trial judge from New York subsequent to March 1, 1982, relating to the withdrawals of consent and requesting vacation of the final decrees.

In summary, the fact was that appellants' attorney, although he was aware at the time that there was ongoing litigation in New York that necessarily called into question the validity of the Spence-Chapin consents, nonetheless presented to the trial court proposed adoption decrees, *with Spence-Chapin consents appended,* without disclosing the existence of the New York litigation. It was after its discovery that this material piece of information had been withheld that the trial court entered the orders we review in this case.

Appellants challenge the trial court's order, arguing that the court had no statutory or other authority to vacate a decree of adoption more than two months after it is entered. We disagree.

The statute of limitations for challenging decrees of adoptions is one year, as provided in ORS 109.381(3):

> "(3)  After the expiration of one year from the entry of a decree of adoption in this state the validity of the adoption shall be binding on all persons, and it shall be conclusively presumed that the child's natural parents and all other persons who might claim to have any right to, or over the child, have abandoned him and consented to the entry of such decree of adoption, and that the child became the lawful child of the adoptive parents or parent at the time when the decree of adoption was rendered, all irrespective of jurisdictional or other defects in the adoption proceeding; after the expiration of such one-year period no one may question the validity of the adoption for any reason, either through collateral or direct proceedings, and all persons shall be bound thereby; provided, however, the provisions of this subsection shall not affect such right to appeal from a decree of adoption as may be provided by law."

The statute represents "a * * * basic legislative judgment that the stability in a child's environment outweighs other considerations in an adoptive situation." *Watkins v. Chirrick,* 19 Or App 241, 245, 526 P2d 1399 (1974); *accord Campbell v. Kindred,* 26 Or App 774, 554 P2d 599, *rev den* (1976).

We understand the effect of the statute to be that an adoption decree is subject to being set aside within one year from the date of entry. The trial court here acted well within the time limit. The only remaining question is whether the court's reason was sufficient.

Without question, the trial court acted properly. Counsel's failure to disclose the facts surrounding the Spence-Chapin consents was nothing less than a fraud on the court. The trial judge, upon being fully apprised of *all* the pertinent facts, could not reasonably have done other than what he did.[3]

Affirmed.

---

[3] Trial counsel's actions may well subject him to professional sanctions. *See* Code of Professional Responsibility DR 1-102(A)(4),(5) and 7-102(A)(3),(5); *see also In re Preston,* 269 Or 271, 525 P2d 59 (1974).