Argued and submitted September 19, reversed and remanded for further proceedings
December 7, 1983

## In the Matter of the Adoption of
## N, a Minor.

## P and P,
*Respondents,*

*v.*

## CHILDREN'S SERVICES DIVISION,
*Appellant.*

(A82-5; CA A27533)

673 P2d 864

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Michael Strooband, and Bischoff & Strooband, P.C., Roseburg, filed the brief for respondents.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an adoption case. Children's Services Division (CSD) appeals from a trial court judgment dismissing the Ps' petition to adopt N.[1] The issue is whether ORS 109.096(2)[2] is

[1] Both CSD and the Ps seek reversal of the trial court's judgment. No brief was filed supporting the court's conclusion that ORS 109.096(2) is unconstitutional as applied.

[2] ORS 109.096 provides:

"(1) When the paternity of a child has not been established under ORS 109.070, the putative father shall be entitled to reasonable notice in adoption, juvenile court, or other court proceedings concerning the custody of the child if the petitioner knows, or by the exercise of ordinary diligence should have known:

"(a) That the child resided with the putative father at any time during the 60 days immediately preceding the initiation of the proceeding, or at any time since the child's birth if the child is less than 60 days old when the proceeding is initiated; or

"(b) That the putative father repeatedly has contibuted or tried to contribute to the support of the child during the year immediately preceding the initiation of the proceeding, or during the period since the child's birth if the child is less than one year old when the proceeding is initiated.

"(2) Except as provided in subsection (3) or (4) of this section, a certified statement of the mother of the child or of the petitioner, or an affidavit of another person with knowledge of the facts, filed in the proceeding and asserting that the child has not resided with the putative father, as provided in paragraph (a) of subsection (1) of this section, and that the putative father has not contributed or tried to contribute to the support of the child, as provided in paragraph (b) of subsection (1) of this section, shall be sufficient proof to enable the court to grant the relief sought without notice to the putative father.

"The putative father shall be entitled to reasonable notice in a proceeding for the adoption of the child if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Bureau of Vital Statistics prior to the child's being placed by an authorized agency in the physical custody of a person or persons for the purpose of adoption by them. If the notice of the initiation of filiation proceedings was not on file at the time of the placement, the father shall be barred from contesting the adoption proceeding.

"(4) The putative father shall be entitled to reasonable notice in juvenile court or other court proceedings if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Bureau of Vital Statistics prior to the initiation of the juvenile court or other court proceedings.

"(5) Notice under this section shall not be required to be given to a putative father who was a party to filiation proceedings under ORS 109.125 which either were dismissed or resulted in a finding that he was not the father of the child.

"(6) The notice required under this section shall be given in the manner provided in ORS 109.330.

"(7) No notice given under this section need disclose the name of the mother of the child.

"(8) A putative father has the primary responsibility to protect his rights, and nothing in this section shall be used to set aside an act of a permanent nature

unconstitutional as applied because it dispenses with notice to the putative father of an out-of-wedlock child under certain circumstances. The trial court held that it was. We disagree and reverse and remand for further proceedings.

The Ps' petition to adopt was dismissed following the trial court's denial of CSD's motion to dispense with notice of the adoption to the putative father. ORS 109.096(2) provides that such notice need not be given a father unless he (1) establishes his paternity, ORS 109.070, (2) commences a filiation proceeding, ORS 109.125, (3) lives with the child at any time during the 60 days prior to the initiation of adoption proceedings or (4) supports or attempts to support the child during the year prior to the initiation of adoption proceedings.[3] Relying on *Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972), the trial court ruled that ORS 109.096(2) is unconstitutional, as applied, because it denies the father procedural due process guaranteed by the Fourteenth Amendment.[4]

N was born to an unwed mother. She surrendered N to CSD for adoption. CSD placed N with the Ps, who petitioned to adopt N. CSD consented to the adoption and recommended to the trial court that the adoption be allowed. *See* ORS 109.316; 418.270. When the Ps submitted an adoption decree, they were advised by the trial court that the decree could not be signed without notice to the putative father. CSD then intervened in support of the adoption. Its affidavit stated that N's mother had named the putative father, that she had met and had had sexual relations with him only once, that she had had no further contact with him since and that his whereabouts were unknown. CSD's affidavit concluded that "[b]ecause of the brief nature of their relationship there is no

---

including, but not limited to, adoption or termination of parental rights, unless the father establishes within one year after the entry of the final decree or order fraud on the part of a petitioner in the proceeding with respect to matters specified in subsections (1) and (5) of this section."

[3] Following *Stanley v. Illinois, infra,* and *Miller v. Miller,* 504 F2d 1067 (9th Cir 1974), Oregon comprehensively amended its adoption statutes (*see* 1975 Or Laws, ch 640, § 2 *et seq*) and adopted ORS 109.096.

[4] The trial court relied only on the Fourteenth Amendment. It made no mention of any state constitutional question. The Oregon Constitution has no provision comparable to the Due Process Clause. *See* Linde, *Without Due Process,* 49 Or L Rev 125, 135.

reason to believe that [the putative father] has any interest whatsoever in [N]." The trial court ruled:

> "The putative father here must be given the opportunity to choose to defend or abandon his constitutionally protected parental rights, a choice which cannot be made without notice that the child exists and is involved in adoption proceedings. As it applies here, ORS 109.096 violates the Fourteenth Amendment to the United States Constitution.

> "The result of the foregoing is the motion to dispense with notice to the putative father must be denied. In addition, the notice must be given, by service or citation (publication) before a decree can be granted."[5]

Our analysis under the Due Process Clause requires an examination of the nature of the governmental interest involved in a particular case as well as the private interests affected by any governmental action. Due process does not require notice and hearing "in every conceivable case of governmental impairment of private interest." *Cafeteria Workers v. McElroy,* 367 US 886, 894, 6 L Ed 2d 1230, 81 S Ct 1743 (1961). The constitutionality of the statute involved here can be evaluated properly only after the nature and extent of the private interest here has been identified. *Board of Regents v. Roth,* 408 US 564, 570-71, 92 S Ct 2701, 33 L Ed 2d 548 (1972).

*Stanley v. Illinois, supra,* was the first Supreme Court case to clarify the due process right to notice of a putative

---

[5] The footnote in *Stanley v. Illinois, supra,* cited by the trial court in its memorandum opinion reads:

"We note in passing that the incremental cost of offering unwed fathers an opportunity for individualized hearings on fitness appears to be minimal. If unwed fathers, in the main, do not care about the disposition of their children, they will not appear to demand hearings. If they do care, under the scheme here held invalid, Illinois would admittedly at some later time have to afford them a properly focused hearing in a custody or adoption proceeding.

"Extending opportunity for hearing to unwed fathers who desire and claim competence to care for their children creates no constitutional or procedural obstacle to foreclosing those unwed fathers who are not so inclined. The Illinois law governing procedure in juvenile cases, Ill Rev. Stat., c. 37, Sec. 704-1 et seq., provides for personal service, notice by certified mail, or for notice by publication when personal or certified mail service cannot be had or when notice is directed to unknown respondents under the style of "All Whom It May Concern." Unwed fathers who do not promptly respond cannot complain if their children are declared wards of the State. Those who do respond retain the burden of proving their fatherhood." 405 US at 657 n 9.

father of an out-of-wedlock child. *Stanley* struck down an Illinois statute that conclusively presumed that the father of a child born out-of-wedlock is unfit to have custody of his child after the incapacity or death of the mother. The *Stanley* court noted that a father's interest in a child he had "sired and raised" was entitled to deference and protection, "absent a powerful countervailing interest." *Stanley v. Illinois, supra,* 405 US at 651. After *Stanley,* the Supreme Court refined and narrowed the liberty interest of a putative father in establishing a relationship with his out-of-wedlock child. *See Caban v. Mohammed,* 441 US 380, 99 S Ct 1760, 60 L Ed 2d 297 (1979); *Quilloin v. Walcott,* 434 US 246, 98 S Ct 549, 54 L Ed 2d 511 (1978).

In *Lehr v. Robertson,* ___ US ___, 103 S Ct 2985, 77 L Ed 2d 614 (1983), the father of an out-of-wedlock child moved to vacate an adoption decree on the ground that the state had violated his due process rights to notice and a hearing. He did not live with the child and had not supported her. The mother had married several months after the child's birth, and her husband petitioned to adopt the child about a year later. Lehr then filed a paternity action. He had failed, however, to have his name placed on the state's "putative father registry," which would have entitled him to receipt of notice of the adoption petition.

The Supreme Court first examined the nature of Lehr's interest, indicating that in all its cases concerning the relationship between parent and child "[it] has emphasized the paramount interest in the welfare of the children and has noted that the rights of the parents are a counterpart of the responsibilities they have assumed." *Lehr v. Robertson, supra,* ___ US at ___. "But the mere existence of the biological link does not merit equivalent constitutional protection." It is only those fathers who demonstrate a commitment to the responsibilities of parenthood who acquire protection under the Due Process Clause. The *Lehr* court explained:

> "The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the

Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie." ___ US at ___. (Footnote omitted.)

The court also found it significant that Lehr's right to notice was within *his* control; he could have had his name placed on the state's putative father registry. The Court next examined the New York adoption law and took into consideration the child's and the state's interests in prompt and certain adoption procedures, the privacy interest of unwed mothers and the risk of creating unnecessary controversy. The court concluded that there was no violation of Lehr's due process rights.

■ This case is similar to *Lehr*. The putative father has not come forward to assume the responsibilities of parenthood. *See Lehr v. Robertson, supra,* ___ US at ___ (White, J., dissenting). This case is different and, perhaps more difficult, because we do not know if the putative father is even aware of the child's existence; the father is not before this court. Nevertheless, we conclude that ORS 109.096(2) satisfies the putative father's Fourteenth Amendment due process rights.[6]

■ The primary purpose of adoption proceedings is the promotion and protection of a child's best interests. *F. v. C.,* 24 Or App 601, 609, 547 P2d 175, *rev den, cert den* 429 US 907 (1976); *see also* ORS 109.350. When adoption is in a child's best interests, it should proceed expeditiously. At the time of trial, N had been with the Ps more than two years. She is now four years old. The state has a strong interest in providing stable homes for children and in protecting existing family units. *See Adoption of Rebecca B.,* 68 Cal App 3d 193, 137 Cal Rptr 100 (1977); *Adoption of Lathrop,* 2 Kan App 2d 90, 575 P2d 894, 897 (1978). Adoptive parents also have a liberty interest in retaining custody of a child. *Smith v. Organization of Foster Families,* 431 US 816, 844, 97 S Ct 2094, 53 L Ed 2d 14 (1977). Further, adoptive parents may involuntarily inhibit the development of a strong bond of nurture and love with a child for fear that the child may be taken from them. That fear may deny the emotional support the child obviously needs.

A stringent requirement for notification in every case could also impinge on the important goal of keeping adoption

---

[6] *See Dept. of Health & Rehab. Services v. Herzog,* 317 So2d 865, 867 (Fla App 1975); *Catholic Char. of Arch. of Dubuque v. Zalesky,* 232 NW 2d 539, 547 (Iowa 1975), *citing Comment,* 59 Va L Rev 517 (1973).

proceedings anonymous. If, as here, the whereabouts of the putative father are unknown, the only effective means of notification is by publication. A publication could embarrass the mother, the putative father and the child. ORS 109.096(7) provides that notice by publication need not name the mother. Without naming the mother, however, notice by publication will be an exercise in futility in many cases, serving only to delay an adoption. *See Catholic Char. of Arch. of Dubuque v. Zalesky,* 232 NW 2d 539, 548 (Iowa 1975). A publication naming the mother may also affect her constitutional right to privacy. *See Caban v. Mohammed, supra,* 441 US at 408 (Stevens, J., dissenting).

■    ORS 109.096 protects putative fathers who demonstrate a commitment to the responsibilities of parenthood. ORS 109.096(8) provides that the father "has the primary responsibility to protect his rights." Fathers who have taken the steps necessary to establish the parent-child relationship will receive notice. They gain the same rights as fathers of children born in marriage. *See, e.g.,* ORS 109.060; 109.094; 109.312. If a putative father has not come forward to initiate a parent-child relationship, his liberty interest is insufficient to justify the procedures necessary to apprise him of the adoption proceeding. *See Comment,* 59 Va L Rev 517, 529 (1973). This approach satisfies the putative father's limited liberty interest under the Due Process Clause and comports with the state's interest in promoting the best interests of a child through expedient and confidential adoption proceedings.

Reversed and remanded for further proceedings.