Argued and submitted May 22, 1992, reversed May 12, reconsideration denied July 28, petition for review denied August 24, 1993 (317 Or 485)

In the Matter of the Adoption of
Tausha Hallford, a Child.

Loretta HALLFORD
and William Hallford,
*Appellants,*

*v.*

Eric V. SMITH,
*Respondent.*

(58-89-04466; CA A69472)

852 P2d 249

Carol K. Chadwick, Eugene, argued the cause for appellants. With her on the brief were Carol J. Hamilton and Anne Morrison, Eugene.

Susan Schmerer, Eugene, argued the cause and filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

Petitioners, mother and her husband, appeal from a judgment that set aside husband's adoption of mother's child because respondent, the putative father, did not receive notice of the adoption proceedings. We reverse.

In February, 1987, mother, then 18, became pregnant. In March of that year, she told respondent, who was then 17, that he was child's father but that she did not want to marry him. Later that month, she ended their relationship and began seeing husband. Shortly thereafter, respondent left the area, but called mother twice during the pregnancy.

Child was born on November 7, 1987. Immediately after the birth, respondent called mother and asked her if he was the biological father. She said that he was not, and he did not pursue the matter.

■ Petitioners married on January 8, 1988. Together with mother, husband began raising child as his own. In March, 1989, respondent returned to the area and, when he heard that child resembled him, contacted mother in an effort to determine whether child was his. From then until May, 1989, respondent made several phone calls to mother, either directly or through his wife, in which he promised to make financial contributions for child's support if he was child's biological father.[1] Although mother told respondent that she did not know if he was the biological father and advised him to establish paternity, she also repeatedly expressed a willingness to "sit down and talk" about support contributions and the issue of paternity.

On May 30, 1989, petitioners filed for a stepparent adoption, which was granted in July. Respondent, who was not given notice of the adoption proceedings, learned of the adoption in October and immediately filed a petition for filiation. On March 20, 1990, the trial court entered a default

---

[1] Respondent spoke directly with mother in only four of the phone calls, the substance of which related only to the issue of paternity. Respondent's wife, however, made approximately ten phone calls to mother on his behalf. During several of those calls, she told mother that respondent would provide financial support for child if he was child's natural father. The offers of support made by respondent's wife on his behalf are sufficient to constitute offers of support made by respondent.

judgment of paternity for respondent, because mother had failed to appear.[2]

On March 30, 1990, respondent commenced this action to set aside the adoption judgment. Petitioners responded by moving to vacate the paternity judgment and to dismiss respondent's *action to set aside the adoption*. The trial court granted the motion to vacate the paternity judgment but denied the motion to dismiss. The court then held a hearing to determine whether to set aside the adoption. In March, 1991, a judgment was entered setting aside the adoption on the ground that mother had committed fraud within ORS 109.096(8).[3]

■    We review *de novo*. ORS 19.125(3); *Hiskey v. Hamilton*, 111 Or App 39, 43, 824 P2d 1170, *rev den* 313 Or 299 (1992).

ORS 109.096(8) provides, in part:

"A putative father has the primary responsibility to protect his rights, and nothing in this section shall be used to set aside an * * * adoption * * * unless the father *establishes* within one year after the entry of the final decree * * * fraud on the part of a petitioner in the proceeding with respect to matters specified in subsections (1) to (5) of this section."[4] (Emphasis supplied.)

---

[2] Mother did submit to blood tests for herself and child, which determined respondent's paternity.

[3] The trial court determined that mother failed to inform the court that respondent had repeatedly tried to contribute to child's support within the meaning of ORS 109.096(1)(b).

[4] ORS 109.096 provides, in pertinent part:

"(1) When the paternity of a child has not been established under ORS 109.070, the putative father shall be entitled to reasonable notice in adoption * * * proceedings if the petitioner knows, or by the exercise of ordinary diligence should have known:

"(a) That the child resided with the putative father at any time during the 60 days immediately preceding the initiation of the proceeding, or at any time since the child's birth if the child is less than 60 days old when the proceeding is initiated; or

"(b) That the putative father repeatedly has contributed or tried to contribute to the support of the child during the year immediately preceding the initiation of the proceeding, or during the period since the child's birth if the child is less than one year old when the proceeding is initiated.

"(2) Except as provided in subsection (3) or (4) of this section, a verified statement of the mother of the child or of the petitioner, or an affidavit of another person with knowledge of the facts, filed in the proceeding and asserting that the child has not resided with the putative father, as provided in paragraph

In their first assignment of error, petitioners contend that respondent's action is time barred by ORS 109.096(8), because he failed to obtain a judgment that "established" mother's fraud within one year of the adoption becoming final. They argue that the trial court erred in failing to construe the word "establish" in accordance with its plain and ordinary meaning and assign error to the court's conclusion that respondent's claim was timely because it was "commenced" within the one-year period. Respondent argues that petitioners' construction would produce an absurd result, because a court could be "divested of authority to consider even a pending matter once the year has elapsed."

■   When interpreting a statutory provision, it is our task to "discern and declare the intent of the legislature." *Fifth Ave. Corp. v. Washington County*, 282 Or 591, 596, 581 P2d 50 (1978); ORS 174.020. "The starting point in every case involving a determination of legislative intent is the language of the statute itself." *Whipple v. Howser*, 291 Or 475, 479, 632 P2d 782 (1981); ORS 174.010. ORS 109.096 (8) provides that a putative father must "establish" fraud within the meaning of ORS 109.096(1)-(5) within one year after the adoption becomes final. Nowhere in the text of the statute is there any indication that the legislature intended "establish" to be synonymous with "commence an action to establish." Although it may be unusual for the legislature to

---

(a) of subsection (1) of this section, and that the putative father has not contributed or tried to contribute to the support of the child, as provided in paragraph (b) of subsection (1) of this section, shall be sufficient proof to enable the court to grant the court the relief sought without notice to the putative father.

"(3) The putative father shall be entitled to reasonable notice in a proceeding for the adoption of the child if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Vital Statistics Unit of the Health Division of the Department of Human Resources prior to the child's being placed by an authorized agency in the physical custody of a person or persons for the purpose of adoption by them. If the notice of the initiation of filiation proceedings was not on file at the time of the placement, the father shall be barred from contesting the adoption proceeding.

"(4) The putative father shall be entitled to reasonable notice in juvenile court or other court proceedings if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Vital Statistics Unit prior to the initiation of the juvenile court or other court proceedings.

"(5) Notice under this section shall not be required to be given to a putative father who was a party to filiation proceedings under ORS 109.125 which either were dismissed or resulted in a finding that he was not the father of the child."

provide a limitation on an action so that a timely filed action may become time-barred while pending, examination of the circumstances surrounding the promulgation of ORS 109.096, as well as its legislative history, reveals that that is what the legislature intended here.

In 1972, the United States Supreme Court ruled that an Illinois procedure for terminating parental rights of putative fathers without notice and a hearing violated the 14th Amendment due process and equal protection rights of the putative father. *Stanley v. Illinois*, 405 US 645, 658, 92 S Ct 1208, 31 L Ed 2d 551 (1972). Two years later, the Ninth Circuit held that the predecessor to ORS 109.096, *former* ORS 109.326(1), violated the putative father's rights recognized in *Stanley,* because it permitted termination of the putative father's parental rights without notice. *Miller v. Miller,* 504 F2d 1067 (9th Cir 1974). *Former* ORS 109.326(1) provided that, "for all purposes relating to the adoption of the child the [putative father] of the child shall be disregarded just as if he were dead."

ORS 109.096 was adopted in 1975. Or Laws 1975, ch 640, § 7. The 1975 Legislature sought to replace ORS 109.326(1) with a procedure that would pass constitutional muster, but was reluctant to grant extensive rights to putative fathers. The "absolute" one-year deadline for establishing fraud in the adoption proceeding was responsive to an overriding concern for ensuring the finality of adoption decrees. That explains the legislature's decision to base the time bar of ORS 109.096(8) on a time other than the commencement of the action. *See* Minutes, Senate Committee on Judiciary, (April 29, 1975, pp. 8-11; May 7, 1975, pp. 8-9), and accompanying exhibits.

■■ The concern for the finality of the adoption judgment is also reflective of the legislature's paramount interest in protecting the welfare of the child. The principal purpose of adoption proceedings is the promotion and protection of the child's best interests. *P and P v. Children's Services Division,* 66 Or App 66, 72, 673 P2d 864 (1983); *F. v. C.,* 24 Or App 601, 609, 547 P2d 175, *rev den, cert den* 429 US 907 (1976); *see also* ORS 109.350. It is in the child's best interests for the adoption to proceed expeditiously and for the judgment to become virtually unassailable after it has been in effect for

one year. *P and P v. Children's Services Division, supra,* 66 Or App at 72; *see also* ORS 109.381(3).[5] Such procedural formalities help to achieve the important goals of "providing stable homes for children and * * * protecting existing family units." *P and P v. Children's Services Division, supra,* 66 Or App at 72. They also safeguard the adoptive parents' liberty interest in retaining custody of the child, which indirectly benefits the child because

> "adoptive parents may involuntarily inhibit the development of a strong bond of nurture and love with a child for fear that the child may be taken from them. That fear may deny the emotional support the child obviously needs." 66 Or App at 72.

■     We conclude that, for respondent to have complied with the time requirement of ORS 109.096(8), he must have obtained a final judgment from the trial court regarding mother's alleged fraud within the one-year period. It is undisputed that the trial court's judgment was docketed well over a year after the adoption had become final. As a result, respondent's action to set aside the adoption judgment is barred.[6]

■     Respondent argues that ORS 109.096(8) is not the only source of authority for setting aside an adoption judgment on

---

[5] ORS 109.381(3) provides, in pertinent part:

"(3) *After the expiration of one year from the entry of a decree of adoption in this state the validity of the adoption shall be binding on all persons,* and it shall be conclusively presumed that the child's natural parents and all other persons who might claim to have any right to, or over the child, have abandoned him and consented to the entry of such decree of adoption, and that the child became the lawful child of the adoptive parents or parent at the time when the decree of adoption was rendered, * * * *after the expiration of such one-year period no one may question the validity of the adoption for any reason, either through collateral or direct proceedings, and all persons shall be bound thereby* * * *." (Emphasis supplied.)

We have recognized that this statute "represents a * * * basic legislative judgment that *the stability in a child's environment outweighs other considerations in an adoptive situation." In re Walker/Pitman/Parris,* 59 Or App 641, 645, 652 P2d 362 (1982). (Emphasis supplied.)

[6] Our recent holding in *Hiskey v. Hamilton, supra,* is unaffected by our decision in this case. In *Hiskey,* the mother surrendered the child to an adoption agency, which placed the child in the custody of potential adoptive parents. Neither the mother nor the agency informed the putative father of the child's placement. However, unlike respondent, the putative father in *Hiskey* learned of the child's placement *before* formal adoption proceedings were initiated and, therefore, before the adoption became final. As a result, he was not confronted with the time restraint imposed by ORS 109.096(8).

the basis of fraud. He asserts that the court also has that authority under ORCP 71C,[7] which provides, in relevant part:

> "This rule does not limit * * * the power of a court to set aside a judgment for fraud upon the court."

ORCP 71 is a general rule of procedure that deals with the court's power to set aside a judgment for fraud. ORS 109. 096(8) is a specific statute governing when a court may set aside an adoption judgment based on specific allegations of a petitioner's fraud in the adoption proceeding. Absent evidence of a contrary intent, the specific statute controls. *State v. Vandepoll,* 118 Or App 193, 198, 846 P2d 1174 (1993); *State ex rel Woodel v. Wallace,* 89 Or App 478, 481, 750 P2d 178, *rev den* 305 Or 467 (1988). We conclude, therefore, that ORS 109.096 is the only authority on which respondent may rely for setting aside the adoption based on mother's alleged fraud in the adoption proceeding.[8] *See State v. Vandepoll, supra,* 118 Or App at 198; *State ex rel Woodel v. Wallace, supra,* 89 Or App at 481. To hold otherwise would render the absolute one-year deadline in ORS 109.096(8) a nullity and defeat the legislature's primary objective of promoting the child's best interests through an expedient and final adoption proceeding.

Because of our determination on this assignment, we need not address the remaining assignments of error.

Reversed.

---

[7] Although respondent argued below that the adoption judgment should be set aside under ORCP 71, he does not refer to ORCP 71 anywhere in his brief. He does, however, contend that the judgment should be set aside based on mother's alleged fraudulent conduct, and we construe that as an argument under ORCP 71.

[8] Respondent may also be arguing under ORCP 71B(1)(c), which provides, in pertinent part:

> "On motion and upon such terms as are just, the court may relieve *a party* * * * from a judgment for the following reasons:

> "(c) fraud, misrepresentation, or other misconduct of an *adverse party.*" (Emphasis supplied.)

Petitioners contend that this section of ORCP 71 is inapplicable, because respondent was not a "party" to the adoption proceedings. Because we conclude that ORCP 71 is not available to a person seeking relief from an adoption judgment, we do not decide whether a non-party may move to set aside a judgment under ORCP 71B(1)(c) or ORCP 71C.