Argued and submitted April 26, review judgment and judgment terminating jurisdiction and wardship vacated and remanded June 2, 2022

In the Matter of J. L. V.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. J. V.,
*Appellant.*

Jackson County Circuit Court
19JU02539;
A177361 (Control), A177360

512 P3d 469

Appellant appeals from juvenile court judgments in which the juvenile court concluded that appellant could not revoke her previous relinquishment of J under the release and surrender documents that appellant signed. Appellant argues that she was entitled to, and did, revoke her relinquishment of J within the permissible time frame prescribed in ORS 418.270(4). The Department of Human Services responds that because J has been adopted, the appeal is moot and that in all events, the juvenile court correctly concluded that appellant could not revoke her relinquishment. *Held*: Because the decision on appeal will have practical effects on appellant's legal relationship with J and it has not been more than one year since J's adoption was finalized, appellant's appeal is not moot. Additionally, the Court of Appeals declined to infer that the juvenile court implicitly rejected appellant's testimony that she revoked her relinquishment within the permitted time frame. The juvenile court erred when it concluded, based on the release and surrender documents, that appellant had "irrevocably" relinquished J without deciding whether appellant had in fact revoked her relinquishment.

Review judgment and judgment terminating jurisdiction and wardship vacated and remanded.

David J. Orr, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JOYCE, J.

Review judgment and judgment terminating jurisdiction and wardship vacated and remanded.

**JOYCE, J.**

Appellant signed documents relinquishing her parental rights to J and giving the Department of Human Services (DHS) the right to consent to J's adoption. Approximately 10 months later, appellant asked the juvenile court for a review hearing, stating that she had revoked her relinquishment. The juvenile court concluded that appellant could not revoke her relinquishment. Because we conclude that the juvenile court applied the wrong legal standard, we vacate the juvenile court's review judgment and judgment terminating jurisdiction and wardship and remand.

On October 2, 2020, appellant signed two documents related to J. One was a "release and surrender[,]" in which appellant agreed that she was "absolutely, permanently and irrevocably" relinquishing "full custody, guardianship and control" of J to DHS. She further authorized DHS to place J for adoption and to consent to J's adoption. Appellant also signed a "certificate of irrevocability and waiver[.]" That document was similar to the release and surrender document but contained an additional clause stating that the release and surrender "shall become irrevocable as soon as the child is placed by" DHS in the custody of those who intend to adopt the child. DHS subsequently designated J's adoptive placement on May 20, 2021.

In August 2021, appellant filed a motion and requested a review hearing. In that motion, appellant asserted that she had "revoked" the release and surrender and her consent to adoption. At the hearing on that motion, DHS presented testimony about the process around appellant signing the relinquishment documents and subsequent contacts with appellant about those documents. Appellant's caseworker, Matheny, testified that she and appellant's original caseworker, Decker, obtained appellant's counsel's permission to go through the relinquishment process directly with appellant. Both caseworkers, but not appellant's attorney, were present when appellant signed the relinquishment documents. Matheny testified that they answered several of appellant's questions about the documents and that they fully explained them to her. Appellant indicated that she "completely understood."

Appellant then contacted DHS on several occasions with questions about the release and surrender. Matheny testified that appellant had contacted her within "maybe" 30 days of appellant signing the documents and again in August 2021, but no further testimony was elicited about what action, if any, Matheny took in response to either of those contacts.[1]

Consistent with Matheny's testimony, appellant testified that the caseworkers read the relinquishment documents to her and, at that point, she "thought [she] understood everything in the document." However, about a month after signing the relinquishment documents, appellant realized that she "made a mistake in signing those papers, because they had essentially coerced [her] into signing those papers[.]" Appellant testified that DHS had been "fraudulent in trying to obtain [her] signature" and were not concerned about J's best interests.

When asked to elaborate, appellant testified that "DHS has made little reasonable efforts[,]" had not "done their due diligence[,]" and had been "constantly lying to the court, making up things." She said that she signed the relinquishment documents because she "felt like [she] had no other choice"; DHS had indicated that it was going to file to terminate appellant's parental rights, she became scared, and "so [she] signed it out of fear." Appellant testified that she sent a text to her caseworker stating that she "wanted to revoke [her] relinquishment because" she had not been given an opportunity to parent J. Appellant testified that she did not receive a response to that text. Appellant stated that she contacted the caseworker again about 60 days later, indicating that she wanted to revoke her relinquishment. Appellant testified that she again did not receive a response.

Appellant was represented by counsel up through March 11, 2021, but stated that when she tried to contact

---

[1] Matheny gave a more extended explanation of the contacts from appellant, but it was not during sworn testimony. As DHS acknowledges, we therefore cannot consider it. *See State ex rel Juv. Dept. v. K. L.*, 223 Or App 35, 38 n 2, 194 P3d 845 (2008) (ORS 419B.352(2) makes "admissible reports, testimony, and other material related to the children's history and prognosis without regard to their competency or relevancy under the rules of evidence, but [it does] not provide for unsworn testimony.").

her attorney "in regards to revoking the relinquishments[,]" she never received a response.

During the hearing, DHS noted that J had been physically placed with an adoptive family and the adoption was close to finalization. DHS argued that the time for appellant to revoke "has passed. And she just cannot, at this point in time, unless she can prove fraud or duress, come in here and have this [relinquishment] set aside." DHS cited ORS 418.270(4), which provides, in part, that after placement for adoption, a parent can have a relinquishment set aside only if they prove fraud or duress. J's attorney echoed DHS's argument, noting that once the child's adoptive placement has been designated, a party cannot revoke their relinquishments unless a parent proves fraud or duress.

Appellant in turn argued she did not have the "benefit of counsel" when she signed the relinquishment and that she "has been trying, in her own way, and on her own terms, to revoke her relinquishments."

After taking judicial notice of the relinquishment documents, the juvenile court denied appellant's motion. It found that appellant signed the relinquishment documents on October 2, 2020, that the adoptive placement was designated on May 20, 2021, and that the documents stated that appellant was "absolutely, permanently, and irrevocably" relinquishing her parental rights. The juvenile court further concluded that "I do not find that duress or fraud was affirmatively proven from the testimony, and for that reason, as I said, I am not allowing the [revocation][.]"

In response to the juvenile court's finding that the relinquishment documents provided that appellant was irrevocably relinquishing her parental rights, appellant's counsel asked the juvenile court if it was interpreting the term "irrevocably" to "indicate that at the time she signed the document it could not be revoked?" The juvenile court responded, "I'm noting for the record that the word appears, it says 'irrevocably.' I'm noting that and basing the decision on that, but primarily on subsection (4) of ORS 418.270."

The juvenile court then entered two judgments. In the first judgment, the juvenile court found that appellant

had "failed to prove that her relinquishments were rendered out of fraud. The adoptive placement has been designated legal risk and as such her relinquishment cannot be revoked." The juvenile court ordered that J's adoption could proceed. The second judgment terminated DHS's jurisdiction and wardship over J. J's adoption was finalized on September 22, 2021.

Appellant appeals both of the juvenile court's judgments. She argues that she did not have the assistance of counsel when she signed the relinquishment documents and that she was entitled to, and did, revoke her relinquishment before J was placed for adoption. DHS responds that because J has been adopted, the appeal is moot and that in all events, the juvenile court correctly concluded that appellant could not revoke her relinquishment.

We reject DHS's threshold contention that this appeal is moot. The party moving for dismissal has the burden to establish that a case is moot, including that the "decision being challenged on appeal will have no further practical effect on the rights of the parties." *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018). The decision on appeal here—determining whether appellant revoked her relinquishment—will unquestionably have a practical effect on appellant. DHS can consent to the adoption of a child whose parent has surrendered the child for purposes of adoption. ORS 418.270(1). During the adoption proceeding, DHS must provide a copy of the biological parent's surrender to the court. ORS 109.325(4)(a). If appellant in fact revoked the relinquishment of her parental rights, DHS was in no position to consent to the adoption. Moreover, ORS 109.381(3) provides a one-year time limit on finalization of adoptions: "After the expiration of one year from the entry of a judgment of adoption in this state the validity of the adoption shall be binding on all persons *** irrespective of jurisdictional or other defects in the adoption proceeding." *See also In re Walker/Pitman/Parris*, 59 Or App 641, 645, 652 P2d 362 (1982) ("statute of limitations for challenging decrees of adoptions is one year"). Under that statute, then, J's adoption—though final—has not yet become conclusively binding irrespective of any defects. Because the outcome of this appeal could have significant

practical effects on appellant and her legal relationship with J, appellant's appeal is not moot.

Turning to the merits, we reject without discussion appellant's contention that she was without counsel when she signed the relinquishment documents. But we conclude that the juvenile court erred when it concluded that, based on the release and surrender document, appellant had "irrevocably" relinquished J.[2]

The operative statute, ORS 418.270(4), provides that a parent may surrender a child for adoption, and provides when such a surrender becomes irrevocable:

> "Parents or guardians who have given a child into the guardianship of a child-caring agency by release or surrender under this section for the purpose of adoption may * * * agree that the release or surrender *shall become irrevocable as soon as the child is placed by the agency in the physical custody of a person or persons for the purpose of adoption*[.] * * * From and after physical placement for adoption, the certificate of irrevocability and waiver and the release or surrender *may not be revoked by the parent or guardian unless fraud or duress is affirmatively proved*."

(Emphases added.) The statute thus provides that a relinquishment becomes irrevocable once a child is placed in the physical custody of people for the purpose of adoption, unless "fraud or duress is affirmatively proved."

The documents that appellant signed here mirror the statute. As noted above, she signed both a release and surrender as well as a certificate of irrevocability and waiver. The release and surrender provided that appellant "absolutely, permanently, and irrevocably gave, released, surrendered and relinquished" her parental rights to J. The certificate of irrevocability further provided that the release and surrender document "shall become irrevocable as soon as the child is placed" by DHS "in the physical custody of a person or persons for the purpose of adoption by them."

---

[2] Appellant does not argue on appeal that the juvenile court erred when it found that she had failed to prove that the relinquishments were the result of fraud or duress. We therefore do not disturb the juvenile court's ruling on that question.

Thus, ORS 418.270(4) framed the questions before the juvenile court: whether appellant's relinquishment of J had become irrevocable at the point in time that appellant had or was attempting to revoke and, if the relinquishment had become irrevocable, whether appellant had proven duress or fraud. Answering the first question required the juvenile court to determine whether appellant revoked her relinquishment prior to J being placed with a family for the purposes of adoption.

But rather than answering that question, the juvenile court stated that it was "basing the decision" on the relinquishment documents, which provided that appellant was "absolutely, permanently, and irrevocably" relinquishing her parental rights. Whether a parent has purportedly "irrevocably" relinquished upon signing the surrender and release and certificate of irrevocability is immaterial given that the statute establishes that a parent's relinquishment is not irrevocable until the child is placed for adoption. Here, appellant's relinquishment became irrevocable on May 20, 2021, and the question for the court, as relevant on appeal, was whether appellant revoked her relinquishment before that date.

The state urges us to conclude that the juvenile court in fact *did* answer the relevant question under ORS 418.270(4), albeit implicitly. That is, the state asks us to determine that the juvenile court implicitly rejected appellant's testimony that she had revoked her relinquishment after signing the relinquishment documents but before J's adoptive placement had been designated.

On the record before us, we cannot reach that conclusion. To be sure, in its written judgment, the juvenile court stated that "[t]he adoptive placement has been designated legal risk and as such her relinquishment cannot be revoked." Even if that legal conclusion could be read to mean that the juvenile court implicitly rejected appellant's testimony, given that the juvenile court expressly ruled that it was "basing its decision" on the irrevocability language in the relinquishment documents themselves— which is error—we are not willing to assume that the juvenile court made the implicit finding that the state

urges.[3] *See Ungerman and Ungerman*, 311 Or App 696, 700-01, 492 P3d 1280 (2021) (declining to infer implied factual findings based on the "erroneous premise undergirding the trial court's" ruling). Put another way, if the juvenile court based its conclusion on the statement of irrevocability in the relinquishment documents, the juvenile court could have reached its conclusion without necessarily deciding whether appellant had in fact later revoked her relinquishment. *See State v. Lunacolorado*, 238 Or App 691, 696-97, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011) (inferring a finding of fact is appropriate "only where we can deduce that the trial court's chain of reasoning must necessarily have included that fact as one of its links"). We therefore decline to infer that the juvenile court implicitly rejected appellant's testimony that she had tried to revoke her relinquishment after signing it and before J was placed with a family for the purposes of adoption.

In light of our conclusion, on remand, the juvenile court must determine whether appellant revoked her relinquishment before May 20, 2021, when, under ORS 418.270(4), the relinquishment became irrevocable.

Review judgment and judgment terminating jurisdiction and wardship vacated and remanded.

---

[3] When a court's oral ruling and written judgment are contradictory, generally the written judgment controls. *State v. Rood*, 129 Or App 422, 425-26, 879 P2d 886 (1994). But here, the court's oral ruling was not inconsistent with the written judgment; it simply articulated a different, additional basis for why it was denying appellant's motion.