Argued and submitted May 17, affirmed August 30, reconsideration allowed
by opinion November 22, 1989
See 99 Or App 469 (1989)

In the Matter of the Adoption of
Weeks, a Minor Child.

VANLUE et ux,
*Appellants,*

*v.*

COLLINS,
*Respondent.*

(88C 40347; CA A49938)

779 P2d 163

Greg Allen Hunt, Eugene, argued the cause and filed the brief for appellants.

John W. Jensen, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

### NEWMAN, J.

In this adoption proceeding, petitioners appeal from a judgment in favor of objector, the putative father. They assign as errors that the court allowed objector's amended objection to the adoption, ORS 109.098(1), denied their amended petition for adoption, decided that objector is the father of the child and awarded him custody. They also assign as error that the court denied their ORCP 54B(2) motion to dismiss the objection for insufficient evidence. On *de novo* review, ORS 19.125(3), we affirm.

The child was born in Oregon on February 1, 1988. Objector had met the natural mother in January, 1987, when both lived in Maine. They lived together there, with the mother's three year old child, from February, 1987, through the last week of June, 1987, when objector moved out of their apartment. During that time, the mother had sexual intercourse only with objector and became pregnant.

In October, 1987, the mother left Maine and came to Oregon, where her grandparents live. She testified at the hearing that she left Maine because she did not want to "be bothered by [objector] anymore." When the mother was still in Maine, objector had offered to support her and their child. On the night before the mother left for Oregon, objector, who is hearing impaired, asked his mother and sister to meet with her. As he testified at the hearing:

> "I wanted to tell her I wanted to help support the child and I wanted to help make her understand and that I wanted to know what her plans were, whether she wanted to raise the child or give it up for adoption so I could make my plans accordingly."

Objector's mother and sister met with the mother and told her of his intentions. She told them that she would maintain contact with objector and his family.

In January, 1988, objector's mother wrote a letter on his behalf to the mother at the address of her grandmother and offered to pay the mother's way back to Maine and to give her a place to stay. On March 18, 1988, objector called the mother's grandmother and asked where the mother resided. Objector's mother also called several Oregon hospitals in

order to obtain a record of the birth. She did not obtain either the mother's address or a record of the birth.

After the birth and before March 29, 1988, the mother received a letter from objector in which he offered support for the child. On March 29, 1988, objector wrote another letter to the mother, which she received, in which he asked: "May I help you to support your child?" About April 7, 1988, objector sent a certified letter, in which he offered to support the child and enclosed a check for $200, to the mother at her grandmother's Salem address, the only Oregon address for the mother of which he knew. The mother's father returned the letter unopened. On the envelope was a forwarding address for the mother in Mt. Angel. On April 19, 1988, objector wrote to the Oregon Vital Statistics Unit and asked for the child's name, sex and time of birth. He did not receive that information.

About April 20, 1988, the mother placed the child for adoption by petitioners. On May 3, 1988, they filed a petition for adoption and the court appointed them temporary guardians of the child. The mother executed a consent to the adoption and a certificate of irrevocability. On April 20, the mother had also executed an affidavit that she filed in the proceeding on May 3.[1] It stated:

> "I am the natural mother of [the child] and [respondent] is the putative father. He has not contributed nor tried to contribute to the support of the child since the child's birth and the child has not resided with him at any time during 60 days immediately preceding the initiation of this proceeding."

Objector left Maine by bus around May 7, and arrived in Oregon around May 11. He testified at the hearing that he wanted to

> "see if I could locate my child to see if the child was adopted,

---

[1] ORS 109.096(2) provides:

"Except as provided in subsection (3) or (4) of this section, a verified statement of the mother of the child or of the petitioner, or an affidavit of another person with knowledge of the facts, filed in the proceeding and asserting that the child has not resided with the putative father, as provided in paragraph (a) of subsection (1) of this section, and that the putative father has not contributed or tried to contribute to the support of the child, as provided in paragraph (b) of subsection (1) of this section, shall be sufficient proof to enable to court to grant the relief sought without notice to the putative father."

still with the mother or what was going on, and I wanted to support the child and I wanted to look for [the mother] and her family and locate them because I had no idea where they were."

He looked for the mother at the forwarding address in Mt. Angel, but she had recently moved. On May 27, he filed an objection to the adoption, with an affidavit that he is the father of the child and had repeatedly offered support for the child, described his efforts to locate the mother and support the child and stated that he desired custody of the child.

At the hearing on October 3, 1988, objector testified as to his efforts to support the child, that he was willing to assume the responsibilities of a father to care for and support the child and to pay the mother's pregnancy-related medical expenses and that he desired full custody of the child. He also testified that he had married in August, 1988, and planned to return to his job in Maine. The mother testified that, when she signed her affidavit, she "knew that [objector] was interested in this child and had offered [to her] many times before support for the child." She also testified that she put the child "up for adoption because [she] heard [that objector] was in town, and [she] was putting her up for adoption for her safety."

Petitioners moved to dismiss under ORCP 54B(2), asserting that objector had not presented evidence sufficient to entitle him to notice under ORS 109.096 or to object under ORS 109.098. The court denied the motion. It ruled that objector was entitled to notice under ORS 109.096(1)(b) and was, therefore, entitled to object under ORS 109.098(1).[2] It found

---

[2] ORS 109.098(1) provides:

"(1) If a putative father of a child *by due appearance* objects to the relief sought in a proceeding *of which he is entitled to notice under ORS 109.096,* the court:

"(a) May abate the proceeding if filiation proceedings are pending to await the outcome of the filiation proceedings.

"(b) Shall, if filiation proceeding are not pending, inquire as to the paternity of the child, the putative father's past endeavors to fulfill his obligation to support the child and to contribute to the pregnancy-related medical expenses, the period that the child has lived with the putative father, the putative father's fitness to care for and rear the child and whether the putative father is willing to be declared the father of the child and to assume the responsibilities of a father." (Emphasis supplied.)

Filiation proceedings were not pending.

that he was the father, was fit and willing to assume the responsibilities of a father, denied the adoption and placed the child with objector.[3] It stated:

> "His effort was as much as could be made, given the effort on the part of the mother willing to adopt the child out to permanently and forever separate the child from the father.
>
> "I have no doubt in my mind that, if someone had asked him for money, that he would have paid it. And I think there was substantial repetition on the part of [objector] in attempting to first locate his — locate [mother] and his child, and that his efforts were largely denied by [mother] intentionally.
>
> "I have no trouble finding that [objector] is the father of the child. I find also that he is fit and willing to assume the role and responsibilities of a father.
>
> "* * * * *
>
> "I think his past endeavors to fulfill his obligation to support the child, given the opposition that he received, has been sufficient."

ORS 109.096(1) states when a putative father is entitled to notice:[4]

> "(1)   When the paternity of a child has not been established under ORS 109.070, the putative father shall be entitled to reasonable notice in adoption, juvenile court, or other court proceedings concerning the custody of the child if the petitioner knows, or by the exercise of ordinary diligence should have known:
>
> "* * * * *
>
> "(b)   That the putative father repeatedly has contributed or tried to contribute to the support of the child during the year immediately preceding the initiation of the proceeding, or during the period since the child's birth if the child is less than one year old when the proceeding is initiated."

Petitioners assert that objector's communications with the mother do not amount to an effort to "repeatedly * * * [try] to

---

[3] The court subsequently granted petitioners' motion to stay the judgment pending appeal.

[4] *See* testimony of Paul Meyer, Senate Judiciary Committee, April 4, 1975. The statute replaced a former statute that the court had declared unconstitutional in *Miller v. Miller,* 504 F2d 1067 (9th Cir 1974). *See also Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972); *P and P v. Children's Services Division,* 66 Or App 66, 69 n 3, 673 P2d 864 (1983).

contribute to the support of the child * * * during the period since the child's birth" and that, in any event, objector did not show that petitioners knew or, by the exercise of ordinary diligence, should have known of objector's efforts. Accordingly, they argue that objector was not entitled to notice and, therefore, was not entitled to object under ORS 109.098(1).

■ We hold that objector was entitled to notice of the adoption proceeding and, therefore, that he was entitled to object. He had repeatedly tried to contribute to the support of the child in the period commencing with the child's birth. Because objector is hearing-impaired, he relied in part on the communications of his mother and sister. Before the child's birth, he indicated several times to the mother and her family, both directly and through his mother and sister, that he desired to support the child. His letter of March 29, 1988, and his earlier letter after the child's birth were offers to support the child. Evidently, the mother also gave that interpretation to the letters, as well as to objector's subsequent trip to Oregon, because she placed the child for adoption as soon as she heard that he was in Oregon looking for her. Objector also sent the letter containing the $200 check that the mother did not receive. Petitioners received timely knowledge of objector's efforts from his objection and affidavit, even if they did not know of his efforts before that time. When objector served and filed his objection and affidavit in May, 1988, the court had not yet held the hearing on the petition.

■ Accordingly, the court was correct when it allowed objector's objection and denied the petition for adoption.[5] It

---

[5] Contrary to petitioners' assertions, the mother's affidavit, under ORS 109.096(2), does not bar objector. That subsection does *not* state that, if the mother executes such an affidavit, the court *must* grant relief without notice to a putative father and proceed without allowing him to object. Furthermore, contrary to petitioners' assertion, ORS 109.096(3) is *not* exclusive and does not state that a putative father becomes entitled to notice, and therefore may object, only if he complies with that subsection. It states:

"The putative father shall be entitled to reasonable notice in a proceeding for the adoption of the child if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Vital Statistics Unit of the Health Division of the Department of Human Resources prior to the child's being placed by an authorized agency in the physical custody of a person or persons for the purpose of adoption by them. If the notice of the initiation of filiation proceedings was not on file at the time of the placement, the father shall be barred from contesting the adoption proceeding."

ORS 109.098(1)(a) and (b) recognize that a putative father may object, even if filiation proceedings are not initiated and notice is not filed with the Vital Statistics Unit.

was also correct in concluding that objector was the father of the child and was "fit and willing to assume the responsibilities of a father," ORS 109.098(1)(b), and to award custody to him.[6]

Affirmed.

---

[6] Petitioners' assignment that the court erred when it denied their motion under ORCP 54B(2) to dismiss the objection for insufficient evidence relies on the same points that we have rejected above and is without merit.