Argued and submitted June 21, 1991, affirmed; motion to appear *amicus curiae* allowed January 22, reconsideration denied April 1, petition for review denied May 26, 1992 (313 Or 299)

Corey Dale HISKEY,
*Respondent,*

*v.*

Sonia HAMILTON,
*Respondent,*

*and*

John DOE,
Jane Doe and LDS Social Services,
*Appellants.*

(FIL 522; CA A66382)

824 P2d 1170

I. Franklin Hunsaker, Portland, argued the cause for appellants. On the brief were William A. Masters and Mitchell, Lang & Smith, Portland, and David M. McConkie, Merrill F. Nelson and Kirton, McConkie & Poelman, Salt Lake City, Utah.

Michael B. Collins and Collins & Collins, Pendleton, waived appearance for respondent Hiskey.

No appearance for respondent Hamilton.

John Chally, Portland, filed a brief *amicus curiae* for Oregon Council of Adoption Agencies.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is a paternity case which, as tried, evolved into a dispute between the rights of potential adoptive parents and the rights of an unwed father who objected to mother's plan to relinquish the child for adoption but whose paternity had not been established before the child was placed in the home of the potential adoptive parents.

Mother, then 16, and father, then 18, dated briefly and conceived a child in July, 1989. They are not married and have never lived together. Mother informed father that she was pregnant and that she intended to relinquish the baby to defendant LDS Social Services, an adoption agency. Father opposed the adoption and, with the help of his parents, retained an attorney. A flurry of correspondence ensued between father's attorney, mother's attorney and the agency. In numerous letters, father asserted his opposition to the planned adoption and threatened legal action to block it. He sent mother two checks — one for $100, which mother returned, and one for $70, which she initially refused but eventually used. Father's parents wrote to mother's parents to express their willingness "to assume responsibility for [mother's] expenses regarding the pregnancy and delivery of the child." Father sent mother a document entitled "Paternity Affidavit," which he had signed and which appeared to require mother's signature. She refused to sign it. Father threatened to file a filiation proceeding, but did not.

The adoption agency attempted to mediate an agreement between mother and father, but it was unsuccessful. Mother returned the unsigned paternity affidavit to father. Her attorney wrote, "since [father] has felt compelled to force [mother's] hand, she will keep and raise the baby and look to [father] for the support and maintenance of the child." Father's counsel acknowledged that, "indeed, [father] is jointly liable for the childs' [sic] birthing, support and future expenses." Mother responded that she would not sign the paternity affidavit, but that she would send father a "stipulated agreement for support, birthing costs, medical insurance and educational costs and expenses."[1]

---

[1] Mother's correspondence also acknowledged father's right to contest the adoption and repeatedly informed him that "along with [father's] refusal to consent comes a very heavy future financial burden."

In February, 1990, the agency told father the name of the hospital where mother planned to deliver and the expected delivery date, April 4. Father was not informed that mother and the agency were planning to proceed with the adoption. The child was born on April 6, 1990. The agency verified that no paternity declaration or notice of filiation proceeding had been filed with the Vital Statistics Unit. Mother surrendered the child to the agency and, on April 9, 1990, the agency placed the child with defendants John and Jane Doe, who want to adopt him. Thereafter, father learned of the child's placement.

On April 20, 1990, father filed this filiation proceeding, naming as parties mother, the adoption agency and the Does. He asserted his paternity and alleged that he had taken no action to protect his paternal rights only because mother had represented that she planned to retain custody of the child and to look to him for financial support. Father also alleged that the agency had breached its duty to notify him of the adoption plans. On April 24, the trial judge ordered mother, the agency and the Does to appear on May 8, 1990, to "show cause why you should not be restrained from proceeding with the adoption of the minor child during the pendency of these [filiation] proceedings." On June 28, the agency filed an answer in which it denied various allegations but admitted that father was the biological father of the child. On that same day, a hearing—which the trial court characterized as "Father's Intervention Hearing"—was held.

On June 29, the trial judge wrote a letter opinion in which he held that father had not lost his rights as the child's natural parent and that the agency had been obligated to notify father that it was making arrangements for adoption of the child. The court gave the "adoptive parents" until August 20, 1990, to enter an appearance "to assert whatever rights they may have." On August 15, 1990, the court entered a judgment incorporating the rulings that it had made in the June 29 opinion.

On August 20, the Does served their answer to father's filiation petition. They admitted and denied various allegations and acknowledged that he was the biological

father, but they asserted that they had established an emotional child-parent relationship with the child, ORS 109.119, and should be granted custody.

After a hearing to determine matters of custody, visitation and support, the trial court ruled that, although the Does had developed emotional bonds with the child, "ORS 109.119 was not intended to cover this situation" and, at any rate, the proposed adoptive parents could not "factually establish custody rights" in this case. As between the two birth parents, the court determined that mother was best suited to assume custody. Father was granted visitation rights and ordered to pay child support. However, the court approved an arrangement that both allowed the Does to retain custody and suspended father's support obligation during this appeal. The court's various rulings were incorporated in the judgment.[2]

The adoption agency and the Does appeal, filing a joint brief.[3] Neither father nor mother has filed a brief. Our review is *de novo*. ORS 19.125(3); *Vanlue v. Collins*, 98 Or App 140, 142, 779 P2d 163, *mod* 99 Or App 469, 782 P2d 951 (1989), *rev den* 309 Or 334 (1990).

Appellants assign error to three of the trial court's rulings. They contend that (1) father should not have been allowed to establish his paternity after mother had relinquished the child; (2) the agency had no duty to notify father of the adoption plan; and (3) the Does have a right to maintain a child-parent relationship with child.

Although appellants refer to the Does as "the adoptive parents," the record does not indicate that an adoption proceeding has been initiated. Indeed, the trial court enjoined the agency from participating in an adoption involving the child during the pendency of the filiation proceeding, and mother's attorney represented to the trial court that no adoption proceeding had been filed. Although mother's relinquishment of the infant was a preliminary step, that act did

---

[2] No one challenges appellants' party status or their right to appeal.

[3] We initially denied, but hereby allow, the *amicus curiae* brief that was filed by the Oregon Council of Adoption Agencies, John Chally and Robin Pope.

not itself constitute adoption of the child or initiation of an adoption proceeding.

■    We begin with the matter of notice. The trial court concluded that "LDS Social Services was obligated under OAR 412-24-030 to notify plaintiff of its arrangements for adoption." OAR 412-24-030, entitled "Services for Biological Parents," provides:

"Services shall be provided for the parents to effect relinquishment of the child or termination of parental rights. These services include:

"(1)   A statement regarding their legal rights, obligations, and responsibilities.

"(2)   Help in understanding the finality of their decision to relinquish their parental rights and what the decision means to them and their child.

"(3)   Clarification of the confidential aspects of the services provided for them and their child, as defined in state law.

"(4)   Post-decision services, upon request."

According to its terms, OAR 412-24-030 requires that the listed services be provided to any parent who is relinquishing a child and any parent whose rights will be terminated. In this case, father is not in either category. The child was relinquished by mother alone, and father had not yet established any parental rights that would be terminated. Although we do not condone the agency's decision to proceed with the adoption plans without notifying father, especially after it had assumed the role of a mediator, OAR 412-24-030 did not require the agency to provide any services to father. The trial court erred in ruling otherwise. It also appears that the trial court confused the provision of services, OAR 412-24-030, with the provision of *notice* to putative fathers, which is addressed in ORS 109.096.

■    Because father had not established his paternity before mother relinquished the child, she had the right to surrender the child for adoption without father's consent. *State v. Edmiston*, 43 Or App 13, 15 n 3, 602 P2d 282 (1979); ORS 109.092.[4] However, a mother's right to consent

_____

[4] ORS 109.092 provides:

"When it is determined that a woman is pregnant with a child, the woman and any man to whom she is not married and with whom she engaged in sexual

unilaterally to a child's adoption does not abrogate or dispense with the requirement that notice of an adoption proceeding must be given to a putative father who is entitled to notice under ORS 109.096. That statute provides, in part:

"(1)   When the paternity of a child has not been established under ORS 109.070,[5] the putative father shall be entitled to reasonable notice in adoption, juvenile court, or other court proceedings concerning the custody of the child if the [individual filing the adoption petition] knows, or by the exercise of ordinary diligence should have known:

"* * * * *

"(b)   That the putative father repeatedly has contributed or tried to contribute to the support of the child during the year immediately preceding the initiation of the proceeding, or *during the period since the child's birth if the child is less than one year old when the proceeding is initiated.*

"* * * * *

"(3)   The putative father shall be entitled to reasonable notice in a proceeding for the adoption of the child if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Vital Statistics Unit * * * prior to the child's being placed by an authorized agency in the physical custody of a person or persons for the purpose of

---

intercourse at approximately the time of conception have an obligation to recognize that the man may be the other person responsible for the conception. During the months of pregnancy, the man may join the woman in acknowledging paternity and assuming the rights and duties of expectant parenthood. If the man acknowledges paternity of the expected child and the woman denies that he is the father or refuses to join him in acknowledging paternity, the man may seek relief under ORS 109.125. If the woman wants the man to join her in acknowledging his paternity of the expected child and the man denies that he is the father or refuses to join her in acknowledging paternity, the woman may seek relief under ORS 109.125. *If after the birth of the child the mother decides to surrender the child for adoption and paternity has not been acknowledged as provided in ORS 109.070(5) or the putative father has not asserted his rights in filiation proceedings, the mother has the right without the consent of the father to surrender the child as provided in ORS 418.270 or to consent to the child's adoption.*" (Emphasis supplied.)

5 ORS 109.070 provides, in part:

   "The paternity of a person may be established as follows:
   "* * * * *

   "(4)   By filiation proceedings.

   "(5)   By joint declaration of paternity filed with the Vital Statistics Unit of the Health Division of the Department of Human Resources * * *."

adoption by them. *If the notice of the initiation of filiation proceedings was not on file at the time of the placement, the father shall be barred from contesting the adoption proceeding."* (Emphasis supplied.)

Appellants argue that father was not entitled to notice of the adoption plans, because he had not fulfilled any of the requirements of ORS 109.096 at the time of child's placement with the Does.[6]

We have previously held that, if the filing of a filiation proceeding is untimely under ORS 109.096(3), the putative father is barred from challenging an adoption. *G.S.B. v. S.M.D.*, 80 Or App 155, 720 P2d 1339, *rev den* 301 Or 765 (1986). We have also held that ORS 109.096(3) "is *not* exclusive and does not state that a putative father becomes entitled to notice, and therefore may object, only if he complies with that subsection." *Vanlue v. Collins, supra*, 98 Or App at 146 n 5. (Emphasis in original.) In *Vanlue*, the putative father had fulfilled the requirements of ORS 109.096(1)(b); accordingly, he was entitled to notice of the adoption proceeding, despite his failure to file a filiation proceeding before the child was relinquished.

As was the case with the putative father in *Vanlue*, we find that father in this case tried to contribute to the support of the child after its birth. Although he did not send money to mother in the three days between the child's birth and its placement with the Does, father's correspondence during the pregnancy declared that his "sole purpose" in the controversy was to secure visitation rights and to establish his "legal liabilities of support." He repeatedly offered to enter into a consent decree regarding custody, visitation and child support and acknowledged that he was "jointly liable for the childs' birthing, support *and future expenses.*" (Emphasis supplied.) It is undisputed that father is the child's biological father. After learning of the pregnancy, he at all times acknowledged his paternity and his financial responsibility

---

[6] Although at first glance it appears that ORS 109.096 is inapplicable to this case because no adoption proceeding has been filed and, thus, there has been no proceeding for father to contest, the *effect* of allowing father to establish paternity is that he becomes able to challenge any adoption that may be sought in the future, and that is a matter to which the statute is addressed.

for the child. He repeatedly expressed in writing his commitment to support and visit the child, and mother responded that she would send father a "stipulated agreement for support, birthing costs, medical insurance and educational costs and expenses." Under the unique facts of this case, we hold that father was entitled to notice of the adoption under ORS 109.096(1)(b).

■■    Accordingly, the trial court did not err in allowing father to establish his paternity after mother had relinquished the child. If adoption of the child is sought, the rules regarding parental consent will apply. *See* ORS 109.312. The trial court also did not err in holding that the proposed adoptive parents' right to maintain custody of the child was not superior to father's. *Hruby and Hruby*, 304 Or 500, 509, 748 P2d 57 (1987).

Affirmed; motion to appear *amicus curiae* allowed.