Submitted on record and briefs April 15, 1993, affirmed January 19, petition for review denied March 22, 1994 (318 Or 478)

In the Matter of the Adoption of
Baby Boy Hylland/Ohnemus.

Mark A. HYLLAND,
*Appellant,*

*v.*

John and Jane DOE,
adoptive parents of Baby Hylland/Ohnemus,
*Respondents.*

(920114L1; CA A76369)

867 P2d 551

Mark A. Hylland filed the briefs *pro se*.

John Chally, Sandra L. Hodgson, Bouneff and Chally and Colette Boehmer filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

**LANDAU, J.**

In this proceeding to vacate an adoption decree, the putative father (father) appeals from a judgment entered after the trial court granted summary judgment for the adoptive parents. We affirm.

On August 2, 1991, mother gave birth to a child in Oregon. Both mother and father resided in California when the child was conceived. Sometime before August, 1991, mother had moved to Oregon without telling father where she would be. Father unsuccessfully tried to find her. On August 8, he filed a filiation proceeding in California to establish paternity and to obtain custody of the child. Mother was unaware of the filiation proceeding and, on August 9, she executed a consent for adoption to a licensed adoption agency, which immediately placed the child for adoption with adoptive parents. Adoptive parents took physical custody of the child the next day. Since then, the child has lived with them in Oregon.

On September 4, 1991, adoptive parents filed a petition for adoption in Jackson County Circuit Court, alleging, among other things, that

> "[t]he birth father's name is unknown. Paternity of the child has not been judicially established, nor has anyone claiming to be the birth father filed a declaration of paternity with the Department of Vital Statistics / see attached exhibit 'D'. The birth father's right to object is barred by ORS 109.096(3)."

The same day, the adoption court signed an order appointing adoptive parents as legal guardians of the child. On October 4, after a hearing, the court entered the adoption judgment, finding:

> "No person has been legally established as the father of [the child]. To the best of [adoptive parents'] knowledge, no person has initiated any legal proceedings to establish his parental rights regarding [the child]. Notice of the adoption proceedings to the natural father of the named minor child is waived as he has not initiated or filed notice of initiation of filiation proceedings as provided by ORS 109.096(3) * * *."

On November 5, 1991, the Oregon Department of Vital Statistics received a letter from father stating that he

had filed proceedings on August 8, 1991, in California to establish paternity and to obtain custody. On November 19, 1991, a hearing was held before the Los Angeles Superior Court, and on December 9, a judgment of paternity by default was entered, granting father sole custody of the child.

On December 20, 1991, father initiated this action to vacate the Oregon adoption judgment. He argued that the adoption was void because the Oregon court lacked jurisdiction to enter it. Both father and adoptive parents moved for summary judgment. The trial court granted adoptive parents' motion and denied father's. This appeal followed.

██ Father argues that the trial court erred in granting summary judgment for adoptive parents because, under Oregon's Uniform Child Custody Jurisdiction Act (UCCJA),[1] the adoption court lacked jurisdiction.[2] ORS 109.730 provides, in part:

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a) This state is the home state of the child at the time of commencement of the proceeding * * *."

ORS 109.710(5) defines "home state" as

"the state in which the child, immediately preceding the time involved, lived with the parents of the child, a parent, or a person acting as parent, for at least six consecutive months, and, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned."

██ Adoptive parents argue that Oregon is the "home state" because the child was born in Oregon; at the time of the adoption, the child was less than six months old; and the child has lived in Oregon since birth with persons acting as his parents. Father argues that, because the adoption agency had

---

[1] Father also mentions the federal Parental Kidnapping Prevention Act of 1980 (PKPA), 28 USC § 1738 *et seq*, to support his argument, although he does not identify any particular provisions that are applicable. Because the jurisdictional provisions in the PKPA are substantially similar to those in UCCJA, we do not address the PKPA separately.

[2] The UCCJA applies to adoption proceedings. *State ex rel Torres v. Mason*, 315 Or 386, 392, 848 P2d 592 (1993); *Stubbs v. Weathersby*, 113 Or App 501, 505, 833 P2d 1297 (1992).

legal custody of the child before he was adopted, the child has not lived from birth with a "person acting as parent." We disagree with father. "Person acting as parent" means "a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or *claims a right to custody*." ORS 109.710(9). (Emphasis supplied.) When the child was born, he lived with his birth mother until August 9, 1991, when she executed a consent for adoption. The next day, the child was placed in adoptive parents' physical custody and care, and has since lived with them. Although adoptive parents had not then been awarded legal custody, they had a colorable claim to custody, because mother had consented to the adoption. *See* ORS 109.316; ORS 418.270; *Rogers v. Platt*, 199 Cal App 3d 1204, 1212-13, 245 Cal Rptr 532 (1988). After they were appointed legal custodians of the child on September 4, 1991, their right to custody was clearly established. We conclude that Oregon is the child's "home state" within the meaning of ORS 109.710(5), and the adoption court had jurisdiction.[3]

■      Father next argues that, even if the adoption court had jurisdiction, it erred in exercising that jurisdiction because adoptive parents failed to provide that court with certain information required by the UCCJA. ORS 109.790 requires a person petitioning for adoption to state "in the first pleading" or in an affidavit attached to that pleading, information concerning the child's address, the places where the child has lived during the preceding five years and the names and addresses of those with whom the child lived during that time. Also required is a declaration under oath whether

"[t]he party has information of any custody proceeding concerning the child pending in a court of this or any other state * * *." ORS 109.790(1)(b).

Although father does not identify precisely what information adoptive parents failed to provide, his contention appears to

---

[3] ORS 109.730(1)(b) provides that an Oregon court has jurisdiction if

"[i]t is in the best interest of the child that a court of this state assume jurisdiction because the child and the parents of the child, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

Because we conclude that the adoption court had jurisdiction under ORS 109.730(1)(a), we do not decide whether it had jurisdiction under ORS 109.730(1)(b).

be that adoptive parents should have informed the adoption court of the pending California filiation proceeding. However, it is undisputed that adoptive parents did not know about the California proceeding until after the Oregon adoption was granted. The UCCJA requires the parties initiating the adoption proceeding to declare *whether* they know of other pending proceedings. Adoptive parents did that.

■    Father also argues that the adoption court erred in exercising jurisdiction, because the California filiation proceeding was filed before the adoption proceeding, and the California courts retained exclusive jurisdiction. Father relies on ORS 109.760(1), which provides:

> "A court of this state shall not exercise its jurisdiction * * * if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state * * *."

However, that statutory provision must be read in context. *PGE v. Bureau of Labor & Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The balance of ORS 109.760 reads:

> "(2)   Before hearing the petition in a custody proceeding, the court shall examine the pleadings and other information supplied by the parties under ORS 109.790 and shall consult the child custody registry established under ORS 109.860 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

> "(3)   If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with ORS 109.890 to 109.920. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum."

When read in context, it is clear that ORS 109.760(1) requires the adoption court to refrain from exercising jurisdiction *if it is made aware* of the pendency of a custody proceeding elsewhere. Nothing in the statute provides that a final adoption decree may later be set aside because, unbeknown to the court or the parties to the adoption proceeding, there was at that time a pending proceeding in another state. *See, e.g., Matter of Marriage of Nasica,* 12 Kan App 2d 794, 797, 758 P2d 240 (1988). In this case, father concedes that the adoption court had no information about any pending proceedings. Moreover, there is nothing in the record indicating that the adoption court could have known about such a proceeding had it consulted the child custody registry. Father did not send notice of the California filiation proceeding until nearly a month after the adoption became final.

■     Father's argument that the California court had exclusive jurisdiction is equally unavailing. California's child custody jurisdiction statute is virtually identical to ORS 109.730(1). The California statute provides:

"(1)   A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

"(a)   This state is * * * the home state of the child at the time of commencement of the proceeding * * *;

"(b)   It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships." Cal Civ Code § 5152(1).

California cannot assert jurisdiction under section 5152(1)(a), because that state is not the "home state" of the child. Oregon is. Nor can California assert jurisdiction under section 5152(1)(b), because there is no evidence that the child, having lived exclusively in Oregon, has any connection with California. *In Re Marriage of Arnold,* 222 Cal App 3d 499, 503, 271 Cal Rptr 624 (1990); *Allison v. Superior Court of Los*

*Angeles County*, 99 Cal App 3d 993, 998, 160 Cal Rptr 309 (1979).

■ Father next argues that the adoption court erred in exercising jurisdiction because father had not consented to the adoption. In support of his argument, father relies on *Eder v. West*, 312 Or 244, 260, 821 P2d 400 (1991), in which the Supreme Court held that consent to adoption by parents is a prerequisite to the exercise of jurisdiction, unless there is a statutory exception that applies. Adoptive parents argue that father's consent was not required because ORS 109.092 provides just such a statutory exception. ORS 109.092 provides, in part:

> "When it is determined that a woman is pregnant with a child, the woman and any man to whom she is not married and with whom she engaged in sexual intercourse at approximately the time of conception have an obligation to recognize that the man may be the other person responsible for the conception. * * * If after the birth of the child the mother decides to surrender the child for adoption and paternity has not been acknowledged as provided in ORS 109.070(5) or the putative father has not asserted his rights in filiation proceedings, the mother has the right without the consent of the father to surrender the child as provided in ORS 418.270 or to consent to the child's adoption."

Father responds that, by filing his filiation proceeding in California first, he had "asserted" his rights and his consent was, therefore, necessary before the child was surrendered for adoption. To determine whether father "asserted" his rights within the meaning of ORS 109.092 merely by filing the California filiation proceeding, we must consider not only the text of the statute, but also its context, *PGE v. Bureau of Labor & Industries, supra*, 317 Or at 611, which includes other provisions of the same statute as well as other related statutes. Therefore, we must examine ORS 109.092 in conjunction with ORS 109.225, the statute governing filiation proceedings, and ORS 109.096, the statute governing notice to putative fathers.

ORS 109.225[4] provides a mechanism for putative fathers to protect their rights in Oregon. It provides that

---

[4] ORS 109.225 provides:

"(1) After filing the petition [of filiation proceeding], the petitioner shall cause the Vital Statistics Unit of the Health Division of the Department of

"after filing the filiation proceeding" the putative father must cause a notice to be filed with the Oregon Vital Statistics Unit concerning that proceeding. ORS 109.096(3) provides one consequence of failure to comply with ORS 109.225 by putative fathers who have not established their paternity:

> "The putative father shall be entitled to reasonable notice in a proceeding for the adoption of the child if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Vital Statistics Unit of the Health Division of the Department of Human Resources prior to the child's being placed by an authorized agency in the physical custody of a person or persons for the purpose of adoption by them. *If the notice of the initiation of filiation proceeding was not on file at the time of the placement, the father shall be barred from contesting the adoption proceeding.*" (Emphasis supplied.)

Thus, the relevant statutes make clear that failure to file notice of filiation proceeding in Oregon will bar a putative father not only from receiving the notice of adoption, ORS 109.096(4), but also from contesting the adoption proceeding. It necessarily follows that an "assertion" of a putative father's rights under ORS 109.092 must include filing notice of the filiation proceeding. Otherwise, the putative father would be allowed to contest an adoption proceeding without having complied with ORS 109.225. In this case, because father had not filed notice of the California filiation proceeding at the time of the adoption, he had not timely "asserted" his rights under ORS 109.092. His consent, therefore, was not required.

---

Human Resources to be served by mail with a notice setting forth the court in which the petition was filed, the date of the filing therein, the case number, the full name and address of the child, the date and place of the child's birth, or if the child is not yet born, the date and place of the child's conception and the probable date of the child's birth, the full names and addresses of the child's alleged parents, and the names and addresses of the petition and of the respondents in the proceedings.

"(2) The Vital Statistics Unit shall file immediately the notice, or a copy thereof, with the record of the birth of the child or in the same manner as its filing of records of birth if the unit does not have a record of the birth. The unit shall only provide the information contained in the notice to persons whose names appear in the notice or to persons or agencies showing a legitimate interest in the parent-child relationship including, but not limited to, parties to adoption, juvenile court or heirship proceedings."

■ ■     Father further argues that the trial court erred in exercising jurisdiction because he had not been given notice under ORS 109.096(1)(b). That statute provides, in part:

> "(1)   When the paternity of a child has not been established under ORS 109.070, the putative father shall be entitled to reasonable notice in adoption, juvenile court, or other court proceedings concerning the custody of the child if the petitioner knows, or by the exercise of ordinary diligence should have known:
>
> "* * * * *
>
> "(b)   That the putative father repeatedly has contributed or tried to contribute to the support of the child during the year immediately preceding the initiation of the proceeding, or during the period since the child's birth if the child is less than one year old when the proceeding is initiated."

It requires the adoptive parents to provide notice of the adoption proceeding only if they knew, or should have known, that the putative father "repeatedly has contributed or tried to contribute to the support of the child" following the child's birth. *Hiskey v. Hamilton*, 111 Or App 39, 46, 824 P2d 1170, *rev den* 313 Or 299 (1992); *Vanlue v. Collins*, 98 Or App 140, 146, 779 P2d 163, *mod* 99 Or App 469, 782 P2d 951 (1989), *rev den* 309 Or 334 (1990). There is no evidence that father contributed or tried to contribute to the child's support. In his briefs, father asserts that he wrote two checks to mother, but the record contains no evidence of the existence of those checks or that they were for the support of the child.[5] Father failed to demonstrate that he was entitled to notice under ORS 109.096(1)(b).

■     Father also contends that his constitutional rights were violated. Although he does not identify precisely the target of his constitutional challenge, he appears to argue that allowing the adoption without notice or consent violated his rights to due process. We have previously addressed and rejected similar arguments. *Burns v. Crenshaw*, 84 Or App 257, 262, 733 P2d 922, *rev den* 303 Or 590 (1987); *P and P v.*

---

[5] In support of his motion for summary judgment on this issue, father offered photocopies of two checks written to the child's mother before the birth. The trial court ruled the documents inadmissible, and father does not assign error to that ruling.

*Children's Services Division*, 66 Or App 66, 673 P2d 864 (1983).

We have considered father's other assignments of error and arguments, and they do not warrant discussion.

Affirmed.