Argued and submitted September 24, affirmed December 19, 2007

In the Matter of J. K.,
a Minor Child.

STATE ex rel DEPARTMENT OF HUMAN SERVICES,
*Respondent,*

*v.*

T. F.,
aka T. K.; and J. K.,
*Appellants.*

Lane County Circuit Court
05774J; Petition Number 05774J01
A135711 (Control)

In the Matter of T. K.,
a Minor Child.

STATE ex rel DEPARTMENT OF HUMAN SERVICES,
*Respondent,*

*v.*

T. K.
and J. K.,
*Appellants.*

Lane County Circuit Court
05775J; Petition Number 05775J01
A135712

175 P3d 976

Karen Torry argued the cause and filed the brief for appellant T. F., aka T. K.

James A. Palmer argued the cause and filed the brief for appellant J. K.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

118

SCHUMAN, P. J.

## SCHUMAN, P. J.

Following a permanency hearing, ORS 419B.470, the juvenile court entered a judgment that authorized the Department of Human Services (DHS) to change its plan for two children, T. K. and J. K., from reunification with their parents to adoption. Both parents appeal. On *de novo* review, ORS 419A.200(6)(b), we affirm, noting that parents had made significant progress at the time of the hearing and that, before DHS proceeds to subsequent steps toward termination of parental rights, parents would be entitled to request (and, absent good cause, the court must grant) another permanency hearing to gauge whether parents' progress has continued to the point where safe reintegration of children into their home may be achieved. ORS 419B.470(4).

We begin by briefly summarizing the events leading to the permanency hearing. Parents first came to the attention of DHS following a number of founded referrals resulting from parents' substance abuse and child neglect. Children were ultimately removed from parents' care and placed in protective custody on December 24, 2005, after DHS found needles, bong pipes, methamphetamine, and precursor chemicals in the home. DHS filed a dependency petition under ORS 419B.100[1] on December 28, 2005, alleging that children's conditions and circumstances endangered their welfare because parents used drugs and alcohol, failed to provide children with proper care while under the influence of drugs and alcohol, exposed children to drugs and drug paraphernalia, engaged in criminal activity, and exposed children to harm by living in a home that was below community standards for cleanliness and safety.

On March 1, 2006, the juvenile court found children within its jurisdiction and ordered parents to complete drug

---

[1] That statute provides, in part:

"(1) Except as otherwise provided in subsection (6) of this section and ORS 107.726, the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(c) Whose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

and alcohol assessments and follow all recommendations, to sign all necessary releases of information, to complete psychological evaluations if requested, to submit to random urinalyses, and to successfully complete a parenting class. Approximately one year later, on February 2, 2007, the juvenile court conducted a permanency hearing in accordance with ORS 419B.470.[2] At that hearing, the court granted parents a 90-day continuance to allow them to engage in necessary services, adding the requirements that they complete drug and alcohol treatment and follow all recommendations, and that they maintain safe and stable housing.

The court held a second permanency hearing on May 8, 2007. As of that date, children were nine years old, and parents had completed their psychological evaluations, but had not fully met any of the other conditions. Parents presented evidence of their significant recent progress, however, which included the following. Both mother and father were employed, regularly attended Alcoholics and Narcotics Anonymous meetings, and maintained a stable living arrangement. They presented a letter from their church pastor stating that "[parents] are doing the things they need to do to move their lives forward. They have been building new, positive relationships."

Mother had enrolled in a DHS-approved drug and alcohol treatment program and presented written verification of her attendance. She had submitted to six random urinalyses, all negative. She presented a positive—indeed, glowing—reference letter from her employer, a call center where she engaged in sales and customer service. She was presently attending DHS-approved parenting classes at the Eugene Relief Nursery and had successfully completed several nonrequired parenting courses at Lane Community College. She was also working with an individual counselor.

---

[2] That statute provides, in part:

"(2) [Except as provided in subsection (1) of this section,] in all * * * cases when a child or ward is in substitute care, the court shall conduct a permanency hearing no later than 12 months after the ward was found within the jurisdiction of the court under ORS 419B.100 or 14 months after the child or ward was placed in substitute care, whichever is the earlier."

Father, having encountered a long waiting list for the drug and alcohol treatment program that DHS would pay for, enrolled in an alternative treatment program at his own expense, which he was expected to begin the evening of the hearing. He stated that he had been clean and sober since October 9, 2006. He had also passed a drug screen in order to obtain his present employment at a local recreational vehicle manufacturer.

At the conclusion of that hearing, the juvenile court declined to grant parents an additional extension of time to complete services and approved the proposed change of the permanency plan from reunification to adoption. Although the court acknowledged parents' recent progress, it was also "mindful that these Petitions were filed in December 2005. So it has been a year and a half, almost, since these cases came to Court." Accordingly, the court found that "even though there has been recent progress, there has not been the progress of the kind that gets to [the point where the plan would be to return the children to parents.]" The court noted, however, that parents could continue to make progress, and that the plan would be reevaluated in the future:

> "It is the policy of DHS * * * that even if the plan changes from returning the children to the parents to some sort of permanent arrangement, that DHS will continue to provide services for parents up until the time that some other permanent plan is actually placed in effect.
>
> "That means that even while the plan may change, the parents are still in a position to present themselves as resources for their children.
>
> "* * * * *
>
> "[T]he parents can continue to work, and if they continue to make * * * progress, DHS is going to continue to re-evaluate this and see whether * * * the plan may be changed."

Our task on *de novo* review is to determine whether a preponderance of the evidence in the record supports the juvenile court's conclusion that it is in the children's best interests that the alternative permanent plan be implemented, giving considerable weight to the court's credibility findings. ORS 419A.200(6)(b); *State ex rel Dept. of Human Services v. S. L.*, 211 Or App 362, 371, 155 P3d 73 (2007).

"Preponderance of the evidence" means that the facts asserted are more probably true than false. *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 402, 737 P2d 595 (1987). This is a lesser burden than the "clear and convincing" evidence of parental unfitness and best interest of the child required before the state may terminate parental rights under ORS 419B.521(1). Under that statute, the state must establish that the truth of the facts asserted is "highly probable." *Tandy Corp.*, 303 Or at 402.

■    The parties agree that ORS 419B.476 governs the juvenile court's determination in this case. That statute provides, in part:

"(2)   At a permanency hearing the court shall:

"(a)   If the case plan at the time of the hearing is to reunify the family, determine whether the Department of Human Services has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

Thus, to warrant a change in the permanency plan from reunification to adoption under the circumstances described in ORS 419B.476(2)(a), the court must find that, despite DHS's reasonable efforts to make it possible for the child to return home safely, the parents have not made sufficient progress to allow that to occur. *S. L.*, 211 Or App at 372; *State ex rel Dept. of Human Services v. Shugars*, 208 Or App 694, 711, 145 P3d 354 (2006).

■    We agree that, at the time of the second permanency hearing, a preponderance of the evidence supported the trial court's conclusion that parents had not made sufficient progress to allow for the safe return of children. In light of the serious nature of parents' conduct leading to the removal of children, parents' notable progress was not of sufficient duration to justify the conclusion that children could safely return to their home. Children had been under the jurisdiction of the court for 17 months; given their need for permanence, the court correctly authorized DHS to proceed with a plan to

achieve adoption. Such contingency planning is in children's interest.

We also agree with the court regarding parents' progress. We presume that if parents have continued that progress and completed necessary services, they would have the opportunity to present evidence to that effect at a future hearing,[3] and, as the juvenile court pointed out, they "certainly would not be the first * * * in a long list of parents who have continued to work and have changed the direction of the case for their children * * *." We also note that, as the state recognized at oral argument, the record at this point would not support termination of parents' parental rights.

Accordingly, the juvenile court did nor err in changing the permanency plan for T. K. and J. K. from reunification to adoption.

Affirmed.

---

[3] ORS 419B.470 provides, in part:

"(4) Unless good cause otherwise is shown, the court shall also conduct a permanency hearing at any time upon the request of * * * parents whose parental rights have not been terminated * * *. The court shall schedule the hearing as soon as possible after receiving a request."