Argued and submitted May 19, reversed and remanded October 15, 2008

In the Matter of R. J. T.,
a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF JACKSON COUNTY,
*Respondent,*

*v.*

K. L.,
*Appellant.*

Jackson County Circuit Court
060653J; Petition Number 060653JA;
A137728 (Control)

In the Matter of R. M. T.,
a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF JACKSON COUNTY,
*Respondent,*

*v.*

K. L.,
*Appellant.*

Jackson County Circuit Court
060654J; Petition Number 060654JA;
A137730

194 P3d 845

Megan L. Jacquot argued the cause and filed the brief for appellant.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Schuman, Judge, and Riggs, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Mother appeals from an order that the trial court issued after a permanency hearing under ORS 419B.476.[1] In its order, the court determined that the Department of Human Services/Community Human Services—Child Welfare Division (DHS) should implement its concurrent plan of adoption for mother's children rather than continuing to plan for their reintegration into her home. Mother raises a number of issues on appeal; we conclude that in these specific circumstances, the trial court should have granted DHS's request for a 90-day continuance of the hearing and, therefore, reverse.

We state the facts as we find them from the record on *de novo* review.[2] ORS 419A.200(6)(b). DHS removed mother's children, R.J.T. and R.M.T., on October 16, 2006, and placed them with mother's father and stepmother. The court established jurisdiction over the children on December 7, 2006, based on mother's admission that she had a substance abuse problem.[3] At the time of the hearing a year later, the children were eight and six years old. Although they have been diagnosed with some emotional problems, they are doing well in their current placement.

At the time that DHS removed the children, mother was in an abusive relationship with a man who apparently dealt methamphetamine. She was also a heavy user of that drug and of marijuana. Between October 2006 and September

---

[1] The 2007 legislature amended many of the statutes that we discuss, but the amendments took effect after the hearing in this case. For convenience, we cite the current versions of the statutes but discuss only provisions that were in effect at the time of the hearing.

[2] The record consists of a DHS 12/14 Month Permanency Review Report and of unsworn colloquies between the court, on the one hand, and mother, mother's attorney, the children's attorney, the DHS representative, and others present in the courtroom, on the other. ORS 419B.325 and ORS 419B.476(1) make admissible reports, testimony, and other material related to the children's history and prognosis without regard to their competency or relevancy under the rules of evidence, but they do not provide for unsworn testimony. It is not clear that all of the evidence would be admissible under these statutes even if it were sworn. However, because no party objects to our using the existing record in deciding this appeal, we do not consider the issue further.

[3] The children's father has never been involved in the case; his current whereabouts are unknown.

2007, mother participated in some of the services that DHS provided, regularly visited her children, and attended all of her court hearings. She made a number of attempts to break away from the abusive relationship, including going to a shelter. However, the man was always able to track her down, and her fear of what he would do to her or to her children, combined with her drug-related inability to recognize the full seriousness of the situation, led her to return to him a number of times.

In September 2007, in order finally to break with her abusive relationship, mother moved from Jackson County to Clackamas County. She was able to do so because of the assistance of a male friend whom she had known since high school. That friend had been living in Southern California and had not been involved with mother when she was abusing drugs. As part of the move, mother and the friend established a relationship and began living together. In Clackamas County, mother sought services from DHS and entered a drug treatment program. She states that her clean and sober date is October 1, 2007. Although she continued to show marijuana metabolites in the urinalyses that she took in November as part of drug treatment, the amounts were consistent with the residual effects of her long-term marijuana use and were much smaller than would occur if she were again using marijuana. She regularly talks with the children by telephone.

According to mother's care provider, she was doing a wonderful job at the time of the permanency hearing on December 6, 2007. As a result, mother's Jackson County social worker withdrew his recommendation that the court implement the alternative plan of adoption and, instead, requested a 90-day continuance of the hearing in order to allow mother to prove that she was serious about engaging in services. The court rejected that request, in part because it did not believe that it could lawfully grant it due to the length of time that the children had been in substitute care. Instead, the court ordered DHS to implement the alternative plan of adoption rather than to continue working to reunite mother and the children.

The court based its decision on several factors. It knew that, in the absence of a compelling reason to do otherwise, ORS 419B.498 requires DHS to file a petition for termination of mother's parental rights after the children have been in substitute care for 15 of the most recent 22 months. The court observed that the children had been in alternative care for almost 14 months and stated that it did not believe that they could be reunified with mother within a reasonable period of time. The court was also concerned that mother had simply moved from one relationship to another rather than learning to live independently and that she might need a period of residential treatment to resolve her drug problems. It did tell mother that, despite its decision, she still had time to turn things around before her parental rights could be terminated.

On *de novo* review, we view mother's actions differently from the way that the trial court did. We also conclude that, under our view of the evidence, the trial court was authorized to grant the requested 90-day continuance and that it should have done so.

What comes through most clearly from this limited record is that, after struggling over an extended period to escape from a relationship that was damaging for her and bad for the children, mother finally succeeded. Between October 2006, when DHS removed the children from her home, and September 2007, when she moved to Clackamas County, mother made substantial efforts to utilize the services that DHS offered. Her failures to follow through on those efforts to the extent that she needed to were in large part the result of pressure and threats from the man with whom she was in an abusive relationship. Mother ultimately recognized that she could not break free from that relationship while remaining in Jackson County, even though that was where her children were. The only alternative that she could find was to take the drastic step of moving to the other end of the state, relying on the assistance of a long-time friend who was not involved in her current abusive condition or in her use of drugs.

The move to Clackamas County appears to have made it possible for mother to make substantial improvements in her personal situation and in her ultimate ability to

care for the children. The evidence showed that she was not using drugs at the time of the hearing and was actively engaged in rehabilitation. Although, as the trial court noted, she moved directly from one relationship to another, her current relationship is with a person who knew her before she was abusing drugs and who was not involved in her drug use. At the time of the hearing, she was not in a position to regain custody of the children, but if she maintained her current course, she might well be able to do so within a reasonable period. However, because the changes were recent at the time of the hearing, it was not possible to say that they would be successful and permanent. In addition, DHS had not had an opportunity to evaluate mother's friend or otherwise investigate her living situation.[4] Any attempt to reach a definitive conclusion would necessarily be premature.

We agree with the trial court that there continue to be areas of concern in this case. Mother has been clean and sober for only a short time. Her moving directly from a bad relationship to a new one without a period of independence is not ideal. However, we do not see a period of independence as an absolute requirement, as the trial court apparently did. In addition, the children have been in substitute care for an extended period, although they have had significant contact with mother throughout that period. Reuniting mother and the children will require substantial work. On the other hand, the court appeared to underestimate the difficulty mother experienced in attempting to break from the abusive relationship or to appreciate her attempts to do so. In particular, the court did not appear to appreciate that her new relationship may have assisted her in doing what she needed to do. In addition, the children are in the care of mother's father and stepmother, so a transition back to mother's care might not be as difficult as if they were living with strangers. Those factors call for more information, and we agree with mother and DHS that 90 days would have been a reasonable period for obtaining it. At the end of that period, the court would have been in a better position to decide on the appropriate permanent plan.

---

[4] Mother's friend was at the hearing and engaged in a colloquy with the court. Although that colloquy raised some areas of concern, those concerns could dissipate after a full investigation.

In many respects, this case is similar to *State ex rel Dept. of Human Services v. T. F.*, 217 Or App 116, 175 P3d 976 (2007). In *T. F.*, DHS removed the children on December 24, 2005, and the court found them within its jurisdiction on March 1, 2006. On February 2, 2007, the court conducted a permanency hearing, at which time it granted the parents, who continued to live together, a 90-day continuance to engage in necessary services. At a second permanency hearing on May 8, 2007, the parents presented evidence of significant progress, including enrolling in appropriate drug and alcohol treatment programs; because the program that DHS had offered was full, father had found another program and paid for it himself. The trial court noted, however, that it had been almost a year and a half since the cases first came before it and concluded that the progress was not yet sufficient to support a plan to return the children to the parents. It therefore approved changing the permanent plan from reunification to adoption but stated that that plan could be changed in the future if the parents continued to work and to make progress. *Id.* at 119-21.

On appeal, we affirmed the trial court's decision because, although the parents had made substantial progress at the time of the permanency hearing, the progress was not sufficient to allow the safe return of the children. The children had been under the court's jurisdiction for 17 months and their need for permanence required proceeding with a potential adoption. However, we also noted that at oral argument the state had recognized that the existing record would not support termination of the parents' parental rights. Thus, the parents would have an opportunity at a future hearing to present evidence of continued improvement and to change the direction of the case. *Id.* at 121-23. In short, the trial court's permanency decision was correct at the time it was made but it was not the final word—in that sense, it was not permanent.

In this case, as in *T. F.*, mother's progress was not sufficient at the time of the hearing to support a permanency plan of reunification. However, unlike in *T. F.*, the trial court denied the request for an additional 90 days to show mother's progress even though that request came from DHS rather

than from mother. If anything, such a request coming from the agency charged with protecting the children is entitled to greater weight than a request coming from a party.

The trial court apparently believed that it did not have the authority to grant the continuance that DHS requested. ORS 419B.476(1) provides that a trial court shall conduct a permanency hearing in accordance with, among other statutes, ORS 419B.310(1). That statute, in turn, provides that the court may continue the hearing from time to time. The trial court, however, was concerned about the requirement in ORS 419B.498(1)(a) that DHS initiate termination proceedings after the children had been in substitute care for 15 of the previous 22 months, a period that, as in *T. F.*, would have elapsed before the end of the requested 90 days. However, ORS 419B.498(2)(b) authorizes DHS to defer filing a termination petition if there is a compelling reason, which DHS has documented in its case plan, for determining that filing a petition would not be in the children's best interests. The statute includes a nonexclusive list of several possible compelling reasons, including that the "parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time * * *." ORS 419B.498(2)(b)(A).

In the circumstances of this case, there was a compelling reason not to file a termination petition immediately after the children spent 15 months in substitute care. After much effort, mother had placed herself in a position in which it was possible for her to participate fully in the services that DHS had available, and she was doing so successfully. The purpose of the proposed 90-day continuance was to determine whether the changes that she was making would make it possible for the children to safely return home within a reasonable time, thus satisfying the statutory preference that children live in their own homes with their own families. ORS 419B.090(5). The children are currently living with relatives and have frequent contact with mother, so the relatively small delay in filing a termination petition—assuming it becomes necessary to do so—was unlikely to be damaging. The trial court, thus, had the lawful authority to grant the

requested continuance, and there was no discernable reason for it not to have done so.[5]

Because of our conclusion that the trial court should have granted the requested continuance, we do not need to consider the parties' other arguments.

Reversed and remanded.

---

[5] If the court had granted the continuance, DHS would have had the time to comply with ORS 419B.498(2)(b) by documenting the compelling reasons for not proceeding immediately with a termination petition in the children's case plans.